IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

DAVID PLUNKETT, as Special Administrator for the Estate of ZACHARY PLUNKETT, deceased,

        Plaintiff,

vs.

ARMOR CORRECTIONAL HEALTH SERVICES, INC., et al.,

        Defendant.

No. 18-cv-125

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

**THIS MATTER** comes before the Court following six motions to dismiss filed by Defendants in the instant lawsuit. *See* Docs. 7, 13, 17, 24, 28 & 31. In a recent Order, the Court addressed the motions filed by Defendants Dr. Curtis McElroy, Nurse Pamela Woods, and Nurse Sundae Phillips. *See* Doc. 80 (the "March 25 Order"). Below, the Court addresses the remaining motions filed by Defendants Armor Correctional Health Services, Inc., Vic Regalado in his official capacity as Tulsa County Sheriff, and the Board of County Commissioners of Tulsa County. *See* Docs. 7, 24 & 28. Having carefully reviewed the pleadings and the applicable law, the Court finds that Plaintiff has failed to plausibly establish his three claims against these Defendants. Therefore, the motions to dismiss are hereby **GRANTED**.

## BACKGROUND

This case is about the alleged grossly inadequate medical treatment Zachary Plunkett ("Mr. Plunkett") received while detained at the Tulsa County Jail in 2016. To recover for the resulting injuries, David Plunkett ("Plaintiff"), as Special Administrator of the Estate of Zachary Plunkett,

1

deceased, names six Defendants in the underlying lawsuit. Plaintiff seeks relief first from the Board of County Commissioners of Tula County ("BOCC"), endowed with the general powers of a county-level government including expending resources and employing various personnel at the Tulsa County Jail. *See* OKLA. STAT. TIT. 19 § 339. Second, Plaintiff is seeking relief from Vic Regalado ("Sheriff Regalado"), the Tulsa County Sheriff at the time Plaintiff was detained at the Jail. As the Jail's "final policymaker," Sheriff Regalado is responsible for the Jail's general maintenance and operation. *See* OKLA. STAT. TIT. 19 §§ 513 *et. seq.* While Sheriff Regalado did not assume his position until 2015,[1] BOCC and then-Sheriff Stanley Glanz contracted with the third Defendant, Armor Correctional Health Services, Inc. ("Armor"), in 2013 to provide healthcare services to inmates at the Jail.

Through this contractual arrangement, the remaining three Defendants as Armor employees (Dr. Curtis McElroy, Nurse Pamela Wood, and Nurse Sundae Phillips) treated Mr. Plunkett while he was detained at the Tulsa County Jail in mid-2016. This series of events serves as the foundation of Plaintiff's claim that Mr. Plunkett received grossly inadequate medical care, described in greater detail in the March 25 Order. *See* Doc. 80. Based on these allegations, Plaintiff asserts the following three causes of action:

1. A claim pursuant to 42 U.S.C. § 1983 for deliberate indifference to Mr. Plunkett's serious medical needs in violation of his Eighth and Fourteenth Amendment rights—asserted against all six Defendants.

2. A negligence claim arising under Oklahoma's common law asserted against Defendant Armor and its three employees (Defendants Dr. Curtis McElroy, Nurse Pamela Wood, and Nurse Sundae Phillips).

3. A claim for failure to provide adequate medical care in violation of Article II Sections 7 and 9 of the Oklahoma Constitution—asserted against all six Defendants.

---

[1] *See Burke v. Regalado*, 935 F.3d 960, 989 (10th Cir. 2019) ("Sheriff Glanz resigned from office on November 1, 2015. The new Sheriff, Vic Regalado, took Sheriff Glanz' place . . . .").

2

Doc. 4 at 18–24. In response to these allegations, Defendants filed six motions to dismiss. *See* Docs. 7, 13, 17, 24, 28 & 31. In the March 25 Order, the Court addressed only those filed by Dr. McElroy, Nurse Wood, and Nurse Phillips, largely due to the similarity of their arguments as well as their direct involvement in Mr. Plunkett's medical care. Ultimately, the Court held that Plaintiff may only proceed with his Section 1983 claim against Defendants Dr. McElroy and Nurse Wood. The Court now determines whether Plaintiff may go forward with claims against Defendants BOCC, Armor, and Sheriff Regalado for the alleged constitutional deprivation.

## DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defense of "failure to state a cause of action upon which relief can be granted" may be raised by motion to dismiss. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that a defendant's liability is more than a "sheer possibility." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). When applying this standard, the Court must "accept as true all well pleaded factual allegations" and view those allegations "in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010).

I.      **Section 1983, Fourteenth Amendment Violation**

In the March 25 Order, the Court held that Plaintiff plausibly stated a Section 1983 claim against co-Defendants Dr. McElroy and Nurse Wood for exhibiting deliberate indifference to Mr. Plunkett's serious medical needs in violation of the Fourteenth Amendment. *See* Doc. 80 at 5–11. Building on that analysis, the Court addresses below whether Plaintiff has similarly stated a *Monell* municipal liability claim against Defendants Armor and Sheriff Regalado for Mr. Plunkett's allegedly inadequate medical treatment. *See Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978).[2]

Under *Monell* and its progeny, Defendants Armor and Sheriff Regalado "cannot be held liable *solely* because [they] employ[ ] a tortfeasor"—allegedly Defendants Dr. McElroy and Nurse Wood. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (quoting *Monell*, 436 U.S. at 691). Rather, "it is when execution of a government's *policy or custom*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770 (10th Cir. 2013) (quotation and citation omitted) (emphasis added).

More specifically, Plaintiff must establish that: (1) Armor and/or Sheriff Regalado employed an "official policy or custom," (2) said policy or custom caused Plaintiff's alleged constitutional deprivation, and (3) Armor and/or Sheriff Regalado were "deliberately indifferent" in that they disregarded the policy's known or obvious consequences. *Crowson v. Washington*

---

[2] While Plaintiff bifurcates his Section 1983 analysis into "*Monell* municipal liability" for Amor and "official capacity liability" for Sheriff Regalado, the underlying framework for both is essentially the same. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 n.13 (10th Cir. 2003) (applying *Monell* framework against a private entity hired by Tulsa County to perform services on its behalf); *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (citing *Monell*, 436 U.S. at 690 n.55) ("Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent.").

*County Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020) (citation omitted); *Waller v. City and County of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019). A "policy or custom" includes the following:

> [1] a formal regulation or policy statement, [2] an informal custom of that amounts to a widespread practice, [3] decisions of municipal employees with final policymaking authority, [4] ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and [5] the deliberately indifferent failure to adequately train or supervise employees.

*Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (citing *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010)).[3] Furthermore, "[t]he deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (holding that plaintiffs may generally establish notice by proving the existence of a pattern of tortious conduct).

Under this standard, Plaintiff argues that Armor and Sheriff Regalado's combined and/or individual policies and customs regarding Tulsa County Jail's healthcare system affirmatively caused Mr. Plunkett's injuries. The Court proceeds by assessing each of Plaintiff's three main theories asserted in the Amended Complaint.

### A. Systemic Deficiencies at the Tulsa County Jail

Plaintiff's most robust theory is that Armor and Sheriff Regalado *continued* an unconstitutionally deficient health care system previously maintained by Armor's predecessor, Correction Healthcare Companies, Inc. ("CHC"), at the Tulsa County Jail. To evidence the deficiency of the prior system, Plaintiff in the Amended Complaint references the following:

---

[3] Defendant Armor argues that Plaintiff cannot hold it liable under *Monell* because "final decision-making authority" rested with Sheriff Regalado. Even assuming this is true, Plaintiff can still hold Armor liable if it set policy that was a "moving force" behind Mr. Plunkett's alleged constitutional deprivation. *Monell*, 436 U.S. at 694.

- The audits of the Tulsa County Jail in 2007 and 2010 indicating poor performance in health care;

- The observations of a former "Director of Nursing" at the Jail over the span of "many years" before Armor succeeded CHC;

- The deaths of two inmates in 2011 resulting from grossly deficient medical care;

- A 2011 report authored by the U.S. Department of Homeland Security's Office of Civil Rights and Civil Liberties indicating a "prevailing attitude among clinic staff of indifference" at the Tulsa County Jail and the fact that "[n]urses are undertrained," among similar issues;

- A report from the Tulsa County Jail's retained medical auditor indicating that "nurses acting beyond their scope of practice increases the potential for preventable bad medical outcomes"; and

- A 2012 "Corrective Action Review" reflecting similar observed deficiencies.

Doc. 4 at 12–17. Relying on these factual allegations, Plaintiff asserts the existence of "deep-seated and well-known policies, practices and/or customs of systemic, dangerous and unconstitutional failures to provide adequate medical and mental health care to inmates at the Tulsa County Jail." In particular, Plaintiff describes Armor's role as "implementing and assisting in developing the policies of [the Tulsa County Sheriff's Office] with respect to the medical and mental health care of inmates at the Tulsa County Jail and has shared responsibility to adequately train and supervise its employees." In sum, Plaintiff contends that the Sheriff's Office and Armor knew of such deficiencies but failed to take reasonable steps to alleviate the risks.

While alarming, this history of deficient health care does not carry the evidentiary weight Plaintiff bestows upon it. For one, this track record spans from 2007 to 2012, an outdated timeframe in relation to the underlying factual basis accruing in June of 2016. Additionally, because it succeeded CHC in 2013, Armor did not have any involvement with the Jail's purportedly deficient healthcare system between 2007 and 2012. Notably, Plaintiff fails to allege

6

a single decision or action of either Defendant suggesting their continuation of CHC's deficient healthcare system. Therefore, the Court finds that the proffered track record followed by Mr. Plunkett's incident about four years later is insufficient to plausibly establish that Armor and Sheriff Regalado continued a grossly deficient healthcare system. *Bd. of City Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 415 (1997) ("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability."). *Cf. Burke v. Regalado*, 935 F.3d 960, 1002 (10th Cir. 2019) (relying on the Tulsa County Jail's track record described above in affirming that a reasonable jury could find that the Sheriff continued an unconstitutionally deficient healthcare system; the underlying constitutional deprivation, however, took place in 2011—nearly five years before the instant factual basis accrued—and involved a different medical provider).

### B. Financial Incentives

Plaintiff alleges that Armor's contract with BOCC and the Sheriff's Office disincentivized Armor from transferring inmates to off-site facilities for treatment to save money at the expense of inmates' well-being. However, the Court finds that this bald and unsupported reference to Armor's "business model" is overbroad, speculative, and conclusory. Thus, this theory is insufficient to establish a "custom or policy" that was a "moving force" behind Mr. Plunkett's alleged constitutional deprivation. *See Lee v. Turn Key Health Clinics, LLC*, No. 19-cv-00318, 2020 WL 959243, at *7 (N.D. Okla. Feb. 27, 2020) ("Assuming these facts are minimally sufficient to allege the existence of a policy or custom of cost-saving, the Complaint fails to plausibly allege that any cost-saving policy was the moving force behind the constitutional violations."); *Woodson v. Armor Correctional Health Services, Inc.*, No. 20-cv-00186, WL 1300596, at *12 (D. Colo. Feb. 28, 2021) (holding that the plaintiff's factual allegations "fail[ed]

7

to show that any claimed deficiencies in Plaintiff's medical care resulted from a specific cost-saving policy"), *adopted at* 2021 WL 1050009 (D. Colo. Mar. 19, 2021); *Sherman v. Klenke*, 653 F. App'x 580, 593 (10th Cir. 2016) (unpublished) (finding similar argument "wholly conclusory"), citing *Winslow v. Prison Health Services*, 406 Fed.Appx. 671, 674 (3d Cir. 2011) ("The naked assertion that Defendants considered cost in treating [an inmate's] hernia does not suffice to state a claim for deliberate indifference . . .").

### C. Failure to Train

Lastly, Plaintiff alleges—albeit, in passing—that "[b]ad medical outcomes persisted due to inadequate supervision and training of medical staff," for which Armor and Sheriff Regalado are responsible. To assert that Defendants "failed to train" Armor's medical staff, Plaintiff must plausibly establish that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of [his due process] rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need for additional training." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (internal quotation omitted).

Similar to Plaintiff's "business model" allegation, this argument is unsupported by any other factual allegations in the Amended Complaint and is, thus, overly broad, speculative, and conclusory. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("[A governmental entity's] culpability for deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Lee v. Turn Key Health Clinics, LLC*, No. 19-cv-00318, 2020 WL 959243, at *8 (N.D. Okla. Feb. 27, 2020) ("Allegations of generalized deficiencies in training related to all aspects of care for inmates with 'complex and serious medical needs' are too conclusory to support a plausible § 1983 municipal liability claim."); *Woodson v. Armor Correctional Health Services, Inc.*, No. 20-cv-

00186, WL 1300596, at *12 (D. Colo. Feb. 28, 2021) ("Plaintiff's allegations regarding a failure to train are too overly broad to support liability under § 1983.").

### D. Conclusion

In sum, the Court finds that Plaintiff's three arguments fail to plausibly establish that Armor and/or Sheriff Regalado employed any sort of policy or custom that was a "moving force" behind Mr. Plunkett's alleged constitutional deprivation. Even assuming the existence of such "policies and customs," Plaintiff has failed to assert that they caused Mr. Plunkett's injuries and that Armor and/or Sheriff Regalado were "deliberately indifferent" in disregarding their known risk and consequences. Therefore, Plaintiff's Section 1983 claim asserted against Armor and Sheriff Regalado is hereby **DISMISSED**.

## II. State Law Claims

Plaintiff asserts two causes of action arising from Oklahoma law: (1) a common law negligence claim against Defendant Armor and (2) a failure to provide adequate medical care claim under Article II §§ 7 and 9 of the Oklahoma Constitution against Defendants BOCC, Armor, and Sheriff Regalado. The Court proceeds by addressing, first, whether Defendant Armor is entitled to tort immunity under the Oklahoma Government Tort Claims Act ("GTCA") and, second, whether Plaintiff has plausibly stated the state constitutional claim against all three Defendants.

### A. GTCA Tort Immunity[4]

Defendant Armor is entitled to tort immunity, barring both state law claims asserted against it. OKLA. STAT. TIT. 51 §§ 152 *et seq*. In relevant part, Section 152.1(A) of the GTCA states: "The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their *employees* acting within the scope of their employment,

---

[4] In previous filings, Defendants BOCC and Sheriff Regalado voluntarily waived their tort immunity under the GTCA. *See* Docs. 24-1 & 47.

whether performing governmental or proprietary functions, shall be immune from liability for *torts*." OKLA. STAT. TIT. 51 § 152.1(A) (emphasis added). The statute defines "torts" as "a legal wrong, independent of contract, involving violation of a duty imposed by *general law*, statute, [and] *the Constitution of the State of Oklahoma*," thereby implicating both of Plaintiff's claims. OKLA. STAT. TIT. 51 § 152(14) (emphasis added). It further reads: "The State or a political subdivision shall not be liable if a loss or claim results from: (25) Provision, equipping, operation or maintenance of any prison, jail or correctional facility . . . ." OKLA. STAT. TIT. 51 § 155(25).

The core question, then, becomes whether Defendant Armor—a private corporation performing healthcare services for Tulsa County—is an "employee" as defined by the Oklahoma GTCA. One provision of the GTCA defines "employee" as any "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies." OKLA. STAT. TIT. § 152(7)(b)(7). For additional context, Plaintiff also argues in the Amended Complaint that Armor was "endowed by Tulsa County with powers or functions governmental in nature, such that [it] became an agency or instrumentality of the state." Doc. 4 at 2.

To determine whether Armor is a GTCA "employee," the Court turns to the Oklahoma Supreme Court's recent decision in *Barrios v. Haskell County Public Facilities Auth. et. al.*, 432 P.3d 233, 236, 238–39 (OK 2018). In that case, the *Barrios* Court "assumed" that Turn-Key Health, LLC, a medical care corporation that contracted with Tulsa County, and its employees, were entitled to GTCA immunity as "employees" under OKLA. STAT. TIT. 51 § 152(7)(b). *Id.* at 236 n.5 ("Generally speaking, the staff of a healthcare contractor at a jail are 'employees' who are entitled to tort immunity under the GTCA by virtue of [OKLA. STAT. TIT. 51] sections 152(7)(b), 153(A), and 155(25)."). The Court's important assumption undermines Plaintiff's contrary

10

Case 4:18-cv-00125-WPJ-JFJ   Document 81 Filed in USDC ND/OK on 04/01/22   Page 11 of 12

interpretation that Armor *cannot* be an "employee" under Section 152(7)(b) because it is a business entity, not a "licensed professional."

Relying on *Barrios*, the vanguard of District Courts in the Northern District of Oklahoma have consistently held that private corporations—and their employees—that contract with the state to provide healthcare services are entitled to immunity from torts arising out of the "operation or maintenance of any prison, jail, or correctional facility." *See Birdwell v. Glanz*, No. 15-cv-304-TCK-FHM, 2019 WL 1130484, at *10 (N.D. Okla. Mar. 12, 2019), *reversed on other grounds by* 790 Fed.Appx. 962 (10th Cir. 2020); *Prince v. Turn Key Health Clinics, LLC*, No. 18-cv-0282-CVE-JFJ, 2019 WL 238153, at *9 (N.D. Okla. Jan. 16, 2019); *Burke v. Regalado*, No. 18-CV-231-GKF-FHM, 2019 WL 1371144, at *3 (N.D. Okla. Mar. 26, 2019); *Crocker v. Regalado*, No. 17-cv-149, 2019 WL 2146595, at *4 (N.D. Okla. May 16, 2019); *Strain v. Armor Correctional Health Care Services, Inc.*, No. 19-cv-527, 2020 WL 5026548, at *1 (N.D. Okla. Aug. 25, 2020); *Wirtz v. Regalado*, 2020 WL 1016445, at *18 (N.D. Okla. March 2, 2020); *Guerrero v. Correctional Healthcare Companies, Inc.*, No. 21-cv-00050, 2021 WL 6062879, at *3 (N.D. Okla. Apr. 27, 2021). The Court finds no reason to deviate from this case law.

Therefore, the Court finds that Armor is an Oklahoma "employee" under Section 152.1(A) and is, thus, immune from Plaintiff's negligence claim, as well as the cause of action asserted under the Oklahoma Constitution.

### B. Oklahoma Constitutional Claim

Finally, Plaintiff asserts a claim under Article II, Sections 7 and 9 of the Oklahoma Constitution against Defendants BOCC, Armor, and Sheriff Regalado. Since the filing of these motions, however, the Oklahoma Supreme Court in *Barrios* held that these Sections of the Oklahoma Constitution do not allow an inmate to bring a tort claim for denial of medical care. 432

11

P.3d at 235. While the Oklahoma Supreme Court distinguished *Barrios* two years later by granting a private right of action under Section 9, that opinion is confined to factual bases having accrued before the Oklahoma legislature amended the GTCA in 2014 extending immunity to alleged deprivations of constitutional rights—a change that precipitated *Barrios* itself. *See Payne v. Kerns*, 467 P.3d 659, 660 (OK 2020) ("We hold a private right of action existed *at the time* the plaintiff/appellant was detained past his sentence . . . .") (emphasis added). Because the alleged incident in the present case occurred in 2016, the Court finds that *Barrios* forecloses Plaintiff's state constitutional claim as asserted against all three Defendants.[5]

**THEREFORE, IT IS ORDERED** that Defendants' three motions to dismiss (Docs. 7, 24 & 28) are hereby **GRANTED.**

**WILLIAM P. JOHNSON**
**UNITED STATES DISTRICT JUDGE**

---

[5] Having found the above issues to be dispositive, the Court refrains from reaching the remaining issues in Defendants' pleadings, such as whether the applicable statute of limitations also bars Plaintiff's claims.